1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

7
8
9
10
11
12
13
14
15

| | |
|---|---|
| Estate of MARTIN SRABIAN, by its executor, DONNIE SRABIAN, <br><br> Plaintiff, <br><br> v. <br><br> COUNTY OF FRESNO; FRESNO COUNTY SHERIFF MARGARET MIMS; COUNTY SHERIFF'S DEPUTIES FRANK HARPER and ROBERT CAREY; and DOES 1 through 50, <br><br> Defendants. | 1:08-CV-00336-LJO-SMS <br><br> **ORDER ON MOTION FOR SUMMARY JUDGMENT** (Doc. 82) |

16
17

**INTRODUCTION**

18
19
20
21
22
23

    Before the Court is a motion by Defendants Frank Harper and Robert Carey for summary adjudication of the operative claims in Plaintiff Donnie Srabian's complaint for violations of 42 U.S.C. § 1983 and common law assault and battery, intentional infliction of emotional distress and negligent infliction of emotional distress. Defendants also challenge Srabian's ability to seek punitive damages. For the reasons discussed below, this Court GRANTS in part and DENIES in part Defendants' motion for summary adjudication.

24

**BACKGROUND**

25

**A. Undisputed Facts**

26
27
28

    On Friday, February 16, 2007, at approximately 8:30 p.m., Defendant Harper was on uniformed patrol when he was dispatched to respond to 7297 E. Walter Avenue (near the City of Fowler) in regards to a Priority 1 "911 hang-up call." Harper was told that when the dispatcher called

the 911 phone number back, the phone rang once and disconnected, and that there was possibly a phone malfunction.  Harper was driving a marked Sheriff's Department patrol car with overhead emergency lights and a spotlight located at the front doors where they meet the windshield.

Harper arrived in the area of 7297 E. Walter at approximately 8:35 p.m. but was unable to find a mailbox, or numbers on a house or business identified as 7297 E. Walter.  At a location that seemed to correspond with the 7297 E. Walter address, Harper located what appeared to be an unoccupied commercial farming operation.  Across the street from the farming operation, Harper saw a driveway leading to what appeared to be a house set back approximately 300 feet from Walter Avenue.  Harper could see lights on in the house.  This location was ultimately determined to be 7274 E. Walter, a residence owned by Donnie Srabian, his brother, Martin Srabian, and his sister, Beverly Srabian ("Srabian residence").  Harper drove down the driveway from Walter Avenue towards the house and used his driver's side spotlight to illuminate the east side of the house to locate street numbers.  Harper stopped his car approximately 50 feet from the house and began to turn his computer off.

At that time, and for approximately one hour prior to defendant Harper's arrival, Donnie Srabian and Martin Srabian were meeting in the kitchen of the home at 7274 E. Walter.  They first became aware of defendant Harper's approach when they heard a noise outside the door of the kitchen. Since there had been a number of burglaries and a home invasion robbery in the neighborhood, Donnie Srabian and Martin Srabian rushed out the door of the kitchen to confront whoever was on their property.

Shortly after Harper stopped his car, Plaintiff Donnie Srabian exited the house from a door on the east side of the house.  There were lit floodlights on northeast corner of the house.  After Srabian opened the door, he walked outside and moved down a walkway eastbound from the house.  Srabian had a small handgun in his right hand.  Before Srabian exited the house, a ski mask and beanie were in the pocket of his coat.

While still seated in his car with the door closed, Harper began drawing his gun from his holster which is on the right side of his gunbelt.  Srabian moved down the walkway and stopped. While still inside his patrol car, Harper fired three times towards Srabian through the open driver's side window.  One of shots struck Srabian.  The bullet entered his right chest area, lacerated his liver and

his right kidney, and exited his back.  The other two bullets lodged in the outer wall of the kitchen.

After Harper fired, Srabian fell onto the grass and generally assumed a fetal position.  Srabian's gun, ski mask and a knit beanie style cap were recovered on the grass.

After shooting Srabian, Harper stepped out of his car keeping the open door between himself and the Srabian residence.  Harper kept his gun drawn and pointed towards Srabian and the house while he continued to monitor both.  After he shot Plaintiff Srabian., Harper put out a "shots fired" broadcast on his patrol car radio and requested that emergency medical services be dispatched to address Srabian's medical needs.

Martin Srabian exited the house after Donnie Srabian.  After Defendant Harper shot Donnie, Martin was visibly upset and asked Harper why he had shot his brother.  Harper told Martin to back up and stay away.  Harper reported on his radio that that a subject had pointed a gun at him and that there was another subject who was being uncooperative.

Around this time or shortly afterward, Defendant Carey, who was also working uniformed patrol in a marked patrol car, had heard Harper dispatched to the 911 call and notified dispatch that he was going to respond and assist.  When Carey arrived, Donnie Srabian was lying on the ground. Harper still had his gun drawn.  Martin Srabian was still visibly upset.  Harper told Carey, with respect to Martin Srabian, "Get him out of here," or "Take care of him."  Carey handcuffed Martin Srabian on the ground and turned him over to another police officer who had arrived on the scene.

Defendants Harper and Carey then handcuffed Plaintiff Donnie Srabian, who was still lying on the ground.  Sometime after, Harper and Deputy Mike Quintanilla dragged Srabian behind Harper's patrol car where they met with emergency medical personnel.  Srabrian had abrasions on his face and head.  He was then turned over to emergency medical personnel for evaluation and treatment.  Shortly thereafter Srabian was transported to University Medical Center by ambulance.  He was hospitalized from February 16 to February 21, 2007.

**B.  Procedural History**

Donnie Srabian and Martin Srabian filed this action on March 10, 2008 against Fresno County, Fresno County Sheriff Margaret Mims, Deputies Harper and Carey, and Does 1 through 50.  (Doc. 1). Martin Srabian passed away on July 24, 2008, and his estate, by its executor Donnie Srabian, was

substituted as a plaintiff.  The action was stayed on January 6, 2010 pending the outcome of the related criminal case *The People of the State of California vs. Donnie Charles Srabian*, Fresno County Superior Court Case No. F0790158.  (Doc. 53).  Plaintiff Donnie Srabian was tried before a jury in the related criminal case.  On June 17, 2010, Srabian was found guilty of the misdemeanor of brandishing or exhibiting a firearm in violation of Penal Code § 417(a)(2) and was acquitted of the felonies of brandishing a firearm in the presence of a peace officer in violation of Penal Code § 417(c),  assault on a peace officer with a semi-automatic firearm in violation of Penal Code § 245(d)(2), and possession of an assault weapon in violation of Penal Code § 12280(b).  On July 17, 2012, this Court ordered bifurcation of the issues of liability and damages in this action.  (Doc. 74).  On October 16, 2012, this Court dismissed with prejudice the entire action by the estate of Martin Srabian as to all defendants, the entire action by Plaintiff Donnie Srabian as to Sheriff Margaret Mims and the County of Fresno, Plaintiff Donnie Srabian's claims for unjustifiable denial of liberty (false arrest) and malicious prosecution in his first cause of action, and Plaintiff Donnie Srabian's seventh cause of action for false arrest and false imprisonment.  (Doc. 81).  Defendants Harper and Carey filed the instant motion for summary judgment on October 19, 2012.  (Doc. 82).  On October 28, 2011, the Court of Appeals, Fifth District affirmed Srabian's misdemeanor conviction.  Plaintiff Donnie Srabian filed an opposition to the motion for summary judgment on November 5, 2012, and Defendants filed a response on November 9, 2012.

## DISCUSSION

### Motion for Summary Judgment

**A.    Standard under Fed. R. Civ. P. 56**

Defendants seek summary adjudication to determine liability for Plaintiff Srabian's operative claims under 42 U.S.C. § 1983 and for common law assault and battery, intentional infliction of emotional distress, and negligent infliction of emotional distress.

Fed .R. Civ. P. 56(b) permits a "party against whom relief is sought" to seek "summary judgment on all or part of the claim."  "A district court may dispose of a particular claim or defense by summary judgment when one of the parties is entitled to judgment as a matter of law on that claim or defense."  *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st Cir.1999).

Summary judgment is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c)(2); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assn.*, 809 F.2d 626, 630 (9th Cir.1987).   The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial."  *Matsushita Elec.*, 475 U.S. at 586, n. 11, 106 S.Ct. 1348, 89 L.Ed.2d 538; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir.1985).

The evidence of the party opposing summary judgment is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Matsushita*, 475 U.S. at 587.  The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251–252.

To carry its burden of production on summary judgment, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, Inc., 210 F.3d 1099, 1102 (9th Cir.2000); *see High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir.1990).  "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact."  *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574.  "As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial."  *Nissan Fire*, 210 F.3d at 1102–1103; *see Adickes*, 398 U.S. at 160.  "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense."  *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d at 574.

"If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

"But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

Under Fed. R. Civ. P. 56(d)(2), a summary judgment/adjudication motion, interlocutory in character, may be rendered on the issue of liability alone. "In cases that involve ... multiple causes of action, summary judgment may be proper as to some causes of action but not as to others, or as to some issues but not as to others, or as to some parties, but not as to others." *Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir.1981); *see also Robi v. Five Platters*, Inc., 918 F.2d 1439 (9th Cir.1990); *Cheng v. Commissioner Internal Revenue Service*, 878 F.2d 306, 309 (9th Cir.1989). A court "may grant summary adjudication as to specific issues if it will narrow the issues for trial." *First Nat'l Ins. Co. v. F.D.I.C.*, 977 F.Supp. 1051, 1055 (S.D.Cal.1977).

As discussed below, defendants have negated essential elements of some of plaintiffs' claims or have shown that plaintiffs lack sufficient evidence to support essential elements of some of plaintiffs' claims.

**B.    Plaintiff's Claims**

1.    **First Cause of Action – Violations of 42 U.S.C. § 1983**

Srabian first claims that Defendants Harper and Carey's conduct violated 42 U.S.C. § 1983. Specifically, Srabian alleges that Harper used excessive deadly force against him and that Harper and

Carey used excessive non-deadly force against him, exhibited a deliberate indifference to his medical needs, and conspired to deprive him of his constitutional rights.

"Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632–633 (9th Cir.1988).

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' " *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3, 61 L.Ed.2d 433 (1979)).   Section 1983 and other federal civil rights statutes address liability "in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976)).   "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan*, 443 U.S. 137, 140 (1979).   Stated differently, the first step in a section 1983 claim is to identify the specific constitutional right allegedly infringed. *Albright*, 510 U.S. at 271, 114 S.Ct. at 811. "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker*, 443 U.S. at 146.

There is no dispute that Defendants acted under color of law.   As such, attention turns to whether the defendant deputies deprived Srabian of a constitutional right.   The facts indicate that the constitutional rights at issue are, under the Fourth Amendment, whether the deadly and non-deadly force used upon Srabian was reasonable and whether Defendants acted with deliberate indifference to his medical needs.

i.       **Reasonableness Standard**

In *Graham v. Connor*, 490 U.S. 386, 395 (1989), the United States Supreme Court determined that section 1983 excessive force claims, both for deadly and non-deadly force, are addressed under the Fourth Amendment's reasonableness standard.   The Supreme Court provided guidance on reasonableness of use of force:

Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application ... however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight....

The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight.... The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. (Citations omitted.)

*Graham*, 490 U.S. at 396–397.  Determining whether a specific use of force was reasonable "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Graham*, 490 U.S. at 396 (internal quotation marks omitted).

The Ninth Circuit has adopted *Graham* and explained the inquiry:

We apply *Graham* by first considering the nature and quality of the alleged intrusion; we then consider the governmental interests at stake by looking at (1) how severe the crime at issue is, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight.  *Deorle v. Rutherford*, 272 F.3d 1272, 1279–80 (9th Cir.2001).  As we have previously explained, "[t]hese factors, however, are not exclusive.  Rather, we examine the totality of the circumstances and consider 'whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*.'"  *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir.2010) (quoting *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir.1994)).

8

*Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir.2011) (en banc). "In some cases, for example, the availability of alternative methods of capturing or subduing a suspect may be a factor to consider." *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (en banc). "Ultimately the most important *Graham* factor is whether the suspect posed an immediate threat to the safety of the officers or others." *Mattos*, 661 F.3d at 441 (internal quotation marks omitted). "However, a simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir.2001), cert. denied, 536 U.S. 958, 122 S.Ct. 2660, 153 L.Ed.2d 835 (2002). The Ninth Circuit has admonished that "a court may not simply accept what may be a self-serving account by the police officer. It must also look at the circumstantial evidence that, if believed, would tend to discredit the police officer's story, and consider whether this evidence could convince a rational factfinder that the officer acted reasonably." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994). Moreover, reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396; *Drummond v. City of Anaheim*, 343 F.3d 1052, 1058 (9th Cir.2003).

### 1. Excessive Deadly Force

#### a. Nature and Quality of the Intrusion

The amount of force Harper used against Srabian was great. It is undisputed that Defendant Harper shot his firearm at Srabian three times from less than fifty feet away and struck him once in the chest. Shooting at a suspect is the use of deadly force. *Blanford v. Sacramento County*, 406 F.3d 1110, 1115 n. 9 (9th Cir.2005). This quantum of force must be measured against the *Graham* factors below.

#### b. Governmental Interests at Stake

In evaluating the governmental interests at stake, the Court follows the Ninth Circuit's analysis and considers the *Graham* factors of (1) how severe the crime at issue is, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396–397, *Mattos*, 661 F.3d at 441. There are genuine issues of facts material to the consideration of the first and second factors, but, viewing the facts in the light most favorable to Srabian as the non-moving party, both factors

weigh against Harper's use of force.  The third factor clearly weighs in favor of Srabian.

The parties dispute facts that are material to a determination of what crime(s) Srabian could be reasonably perceived as committing when he was shot by Harper.  At the time Harper shot Srabian, Srabian was holding a firearm in his right hand.  Therefore, he could be reasonably perceived as committing the misdemeanor of brandishing or exhibiting a firearm, which consists of drawing or exhibiting a firearm in the presence of another person in a rude, angry, or threatening manner.  Penal Code § 417(a)(2).  However, Harper claims that he believed he had interrupted Srabian in middle of a home invasion which caused Harper to fear for his life and use deadly force.  Harper stated that Srabian was wearing a ski mask and that Srabian took a shooting stance and aimed his firearm at Harper.  Srabian stated that he was not wearing a ski mask, that he kept his right arm down at his side, and never assumed a shooting stance or aimed his hand gun at Harper.  Viewing the facts in the light most favorable to Srabian, Srabian could only reasonably be suspected of committing a misdemeanor. This weighs against the use of deadly force by Harper.

The parties also are in dispute over facts material to whether Srabian posed an immediate threat to the safety of peace officers.  The parties agree that, at the time Harper shot Srabian, Srabian was holding a gun in his right hand while standing on a walkway on his front lawn, Harper could see Srabian, and Harper did not announce himself or give any warning or instruction to Srabian.  However, the parties expressly disagree on whether the side spotlight of Harper's patrol car was on during the period between when Donnie Srabian exited the Srabian residence and when he was shot by Harper. The parties agree that the spotlight can be used to diminish the night vision of the person or people on whom the spotlight is shined and to hide what is behind the spotlight, and that Defendant Harper has been trained to use it for those purposes.  Harper claims that his spotlight was not on during this period, and that he was able to see the firearm in Srabian's right hand from the illumination of the floodlights from the northeastern corner of the Srabian residence.  Srabian claims that the spotlight was on when he exited the Srabian residence, that the spotlight blinded him as soon as he stepped outside, and that he could not see the patrol car or Defendant Harper behind the spotlight.  As noted above, the parties also disagree over whether Srabian assumed a shooting stance and aimed his hand gun in Harper's direction.  Viewing the facts in the light most favorable to Srabian, the spotlight on Harper's

10

patrol car was on at the time Srabian exited the Srabian residence and the spotlight blinded Srabian such that he could not see or aim his firearm at Harper's patrol car or Harper.  Viewed in this light, because Srabian could not see Harper or his patrol car and made no move to aim or use his firearm, he did not pose an immediate threat to the safety of Harper when Harper shot him.  This "most important *Graham* factor" weighs against Harper's use of deadly force.  *Mattos*, 661 F.3d at 441 (internal quotation marks omitted).

As for the third factor, it is undisputed that Srabian was not actively resisting arrest or attempting to evade arrest by flight at the time Defendant Harper shot him.  Therefore, this factor also weighs in favor of Plaintiff Srabian.

### c.   Reasonableness of Force

Determining whether a specific use of force was reasonable "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Graham*, 490 U.S. at 396 (internal quotation marks omitted).   As discussed above, viewing the facts in the light most favorable to Srabian, all three *Graham* factors weigh against Harper's use of deadly force.  The parties also vigorously dispute issues of fact as to whether Harper's spotlight was on, whether Srabian assumed a shooting stance and aimed his firearm at Harper, and whether Srabian was wearing a ski mask.  These disputed facts are material because they "might affect the outcome of the suit under the governing law[.]"  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *see Ting v. United States*, 927 F.2d 1504,1510 (9th Cir.1991) ("We need not decide whether the shooting of [plaintiff] Ting would be objectively reasonable under [officer] Burns' version of the facts because material questions exist regarding the circumstances of the shooting.").  Because the evidence is such that a jury could reasonably conclude that Harper's use of deadly force was unreasonable and therefore excessive, summary judgment on this issue is DENIED.  *Id*. at 247-8.

### d.   Qualified Immunity

Harper claims that he is entitled to qualified immunity for his use of deadly force against Srabian.  The doctrine of qualified immunity shields public officials from liability for civil damages, so long as their conduct does not violate clearly established constitutional rights.  *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982).  Determining whether an official is entitled to qualified immunity entails a two-pronged analysis: (1) whether the facts as alleged show the official's conduct violated a constitutional right; and (2) whether it would be sufficiently clear to a reasonable official that his conduct was unconstitutional in the situation he confronted.  *See Saucier v. Katz*, 533 U.S. 194, 201–02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).  A court cannot undertake this analysis where, as here, historical facts material to the qualified immunity analysis are in dispute.  *See Torres v. City of Los Angeles*, 548 F.3d 1197, 1210–11 (9th Cir.2008).  If in fact Harper's spotlight was on, diminishing Srabian's vision, Srabian never assumed a shooting stance or made a move to aim or use his handgun, and Srabian was not wearing a face covering, Harper would not have had a reasonable basis for believing that Srabian was committing a home invasion and to immediately use deadly force against Srabian without announcing himself or giving any warnings.  The Court, however, cannot make that factual determination; and the issue must be decided by a jury.  *Id.* at 1210.  Accordingly, Defendants' motion for summary judgment is DENIED with respect to qualified immunity.

### e.   *Heck* Doctrine

Harper argues that Srabian's claim for excessive deadly force is barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994).  *Heck* precludes a 42 U.S.C. § 1983 claim based on actions which would "render a conviction or sentence invalid" where that conviction has not been reversed, expunged, or called into question by issuance of a writ of habeas corpus.  *Heck*, 114 S.Ct. at 2372.  "Consequently, the relevant question is whether success in a subsequent 1983 suit would 'necessarily imply' or 'demonstrate' the invalidity of the earlier conviction or sentence[.]"  *Beets v. County of LA*, 669 F.3d 1038, 1042 (9th Cir. 2011) (quoting *Heck*, 512 U.S. at 487).  *Heck* bars the § 1983 action if it necessarily implies the invalidity of the underlying conviction, but it does not bar all § 1983 claims based on an underlying state criminal conviction.  For example, the Ninth Circuit has held that an allegation of excessive force by a police officer would not be barred by *Heck* if it were distinct temporally or spatially from the factual basis for the person's conviction.  *Beets*, 669 F.3d 1038, 1042 (citing *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir.2005) (en banc)).  The critical element remains whether the plaintiff's action, if successful, will "demonstrate the invalidity of any outstanding criminal judgment."  *Beets*, 669 F.3d 1038, 1043 (citing *Heck*, 512 U.S. at 486–87, 114 S.Ct. 2364).

Srabian has a standing misdemeanor conviction for exhibiting or brandishing a firearm in violation of Penal Code § 417(a)(2).  The offense consists of drawing or exhibiting a firearm not in self-defense in the presence of another person in a rude, angry, or threatening manner.  As Defendant Harper notes, the firearm need not have been pointed directly at a victim.  *People v. Sanders*, 11 Cal.4th 475, 542 (1995).  It is undisputed that Srabian was carrying a firearm in his right hand at the time Harper shot him.  A jury finding that Harper used excessive deadly force in shooting Srabian without warning or announcing himself would not necessarily "demonstrate the invalidity of" Srabian's conviction for exhibiting or brandishing a firearm.  *Beets*, 669 F.3d 1038.  It is for a jury to determine, among other things, whether the manner and circumstances in which Srabian wielded the firearm amounted to an immediate threat to Harper's safety such that Harper used reasonable force in shooting Srabian.  Therefore, Defendants' motion for summary judgment is DENIED with respect to this claim.

### f.    Collateral Estoppel

Defendant Harper contends that Srabian's excessive deadly force claim is collaterally estopped by judicial determination at a preliminary hearing in Srabian's criminal case and by his conviction for exhibiting or brandishing a firearm.

Under California law, collateral estoppel "prevents a party who had a full and fair opportunity to litigate a particular issue in a prior proceeding from re-litigating it in a subsequent proceeding." *McCutchen v. City of Montclair*, 73 Cal.App.4th 1138, 1144 (1999).  Collateral estoppel applies where (1) the issue is identical to that decided in a former proceeding; (2) the issue was actually litigated and (3) necessarily decided; (4) the doctrine is asserted against a party to the former action or one who was in privity with such a party; and (5) the former decision is final and was made on the merits. *Id*.

The issue in Srabian's excessive deadly force claim is whether Harper used reasonable force in shooting Srabian.  At the preliminary hearing, the judge found probable cause to believe Srabian assaulted Harper with a firearm.  While related, those issues are not identical, as is required for collateral estoppel.  Whether or not Srabian brandished or exhibited a firearm is also not identical to whether Harper's use of force in shooting Srabian was reasonable.  Because Harper's argument fails to

meet the first prong of the five-pronged collateral estoppel inquiry, it is not necessary to consider the other requirements.  For these reasons, Defendant Harper's motion for summary judgment with respect to collateral estoppel is DENIED.

### 2.  **Excessive Non-deadly Force**

Srabian also claims that Defendants Harper and Carey used excessive non-deadly force against him when they handcuffed him after he was shot by Harper and that Harper and Deputy Quintanilla used excessive non-deadly force when they dragged him, handcuffed, from the front lawn to behind Harper's patrol car.

The reasonableness inquiry for non-deadly force is the same as that for deadly force – Fourth Amendment objective reasonableness as determined by "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks omitted).  The governmental interests are likewise considered using the *Graham* factors of (1) how severe the crime at issue is, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight.  *Graham*, 490 U.S. at 396–397, *Mattos*, 661 F.3d at 441.

### a.  **Nature and Quality of the Intrusion**

After Srabian was shot in the right chest area by Harper, he went down onto the grass of the front lawn.  Sometime later, after Martin Srabian had informed Harper that Donnie Srabian was his brother, Harper attempted to handcuff Donnie Srabian where Srabian was down on the lawn.  He had difficulty handcuffing Srabian and Carey assisted in applying force so that Srabian could be handcuffed.  Harper does not allege that Srabian resisted being handcuffed.  Harper and Carey then handcuffed Srabian.

After Srabian was handcuffed, Harper and Deputy Quintanilla dragged Srabian from the lawn to behind Harper's patrol car.  Harper had stopped his car about fifty feet from the Srabian residence.  Srabian sustained abrasions to his face and head.  Harper alleges that he and Quintanilla dragged him by taking hold of his coat in the shoulder/armpit area, one on each side.  Srabian claims that he recalls being dragged in such a way that his head hit the concrete, which is consistent with his

injuries.

Viewing the facts in the light most favorable to Srabian, Harper and Carey applied force to handcuff Srabian after he was shot by Harper, Srabian did not resist, and Harper and Quintanilla dragged Srabian, handcuffed and shot, such that his head hit the concrete for a distance around or somewhat less than fifty feet. This use of force must be measured against the *Graham* factors below.

### b.    Governmental Interests at Stake

As with claims for excessive deadly force, the governmental interests in excessive non-deadly force claims are considered using the *Graham* factors of (1) how severe the crime at issue is, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396–397, *Mattos*, 661 F.3d at 441. All three factors weigh against the use of force by Defendants Harper and Carey and by Deputy Quintanilla.

At the time Harper and Carey handcuffed Srabian, there was no reasonable basis for them to believe Srabian was committing any crime. Before Srabian was shot and went down, he was exhibiting a firearm. However, when Harper and Carey handcuffed Srabian, Srabian was no longer exhibiting or carrying any weapons. Srabian had been shot and was lying on the grass. Martin Srabian had already informed Harper that Donnie Srabian was his brother, and this dispelled any reasonable basis Harper may have had for believing that Srabian was committing a home invasion robbery. Further, when Harper and Quintanilla dragged Srabian to behind Harper's patrol car, Srabian was shot and handcuffed and clearly not in the process of committing any crime. This factor weighs against the use of force by Defendants Harper and Carey and Deputy Quintanilla.

At the time Harper and Carey handcuffed Srabian, he had been shot and injured, he was lying on the grass, and he was not wielding a firearm. Defendants argue that their safety was still threatened because the hand gun was still in Srabian's vicinity on the grass. However, there is no evidence that Srabian attempted to gain control of the gun or that Srabian was exhibiting any aggression toward or desire to harm or use force against Defendants. Defendants easily could have moved the gun. Further, Srabian was handcuffed at the time that Harper and Quintanilla dragged him to behind Harper's patrol car. The deputies were all armed and uninjured, Srabian was shot, unarmed,

15

lying in the grass, and, later, handcuffed.  There is no objective reasonable basis that Srabian posed an immediate threat to the safety of the officers when Harper and Carey handcuffed him and when Harper and Quintanilla dragged him.  Therefore, this factor also weighs against the use of force by Defendants Harper and Carey and Deputy Quintanilla.

Finally, it is undisputed that Srabian, shot and down, was not actively resisting arrest or attempting to evade arrest by flight when Defendants handcuffed him and when Harper and Quintanilla dragged him.  This factor weighs against the use of force by Defendants Harper and Carey and Deputy Quintanilla.

### c.      Reasonableness of Force

Determining whether a specific use of force was reasonable "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Graham*, 490 U.S. at 396 (internal quotation marks omitted).  As discussed above, viewing the facts in the light most favorable to Srabian, all three *Graham* factors weigh against Defendants' and Quintanilla's use of non-deadly force.  In fact, it appears that even undisputed facts would weigh against this use of force.  Because the evidence is such that a jury could reasonably conclude that Defendants' and Quintanilla's use of non-deadly force was unreasonable and therefore excessive, summary judgment on this issue is DENIED.  *Id.* at 247-8.

### d.      Qualified Immunity

Defendants Harper and Carey argue that they are entitled to qualified immunity for their use of non-deadly force.  Determining whether an official is entitled to qualified immunity entails a two-pronged analysis: (1) whether the facts as alleged show the official's conduct violated a constitutional right; and (2) whether it would be sufficiently clear to a reasonable official that his conduct was unconstitutional in the situation he confronted.  *See Saucier v. Katz*, 533 U.S. 194, 201–02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).  As discussed above, viewing the facts in the light most favorable to Srabian, the evidence could support a reasonable conclusion that the use of non-deadly force by Harper, Carey, and Quintanilla was unreasonable and therefore violated Srabian's Fourth Amendment right to be free from unreasonable search and seizure.  In addition, after being informed by Martin Srabian that Donnie Srabian was his brother, a reasonable officer would not have believed that

applying combined force by two deputies to handcuff Srabian, who was shot, unarmed, and lying on the grass, was a constitutional use of force. Even if a reasonable officer perceives the gun lying in the vicinity of Srabian was a potential threat to safety, despite Srabian's lack of resistance or attempt to reach the gun, the officer could easily eliminate that threat by moving the gun rather than using force. Therefore, summary judgment based on qualified immunity with respect to Plaintiff's claim for excessive non-deadly force is DENIED.

ii. **Deliberate Indifference to Medical Needs**

Srabian alleges that Defendants acted with deliberate indifference to his serious medical needs when Harper and Carey handcuffed him and when Harper and Quintanilla dragged him to behind Harper's patrol car.

The Ninth Circuit analyzes claims regarding deficient medical care during and immediately following an arrest under the Fourth Amendment. *See Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1098–99 (9th Cir.2006) (explaining that while the Supreme Court has analyzed such claims under the Due Process Clause of the Fourteenth Amendment in the past, it appears that the Fourth Amendment is the proper authority following the decision in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). *Cf. City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983) (the Due Process Clause of the Fourteenth Amendment requires officers to provide medical care to individuals who have been injured while being apprehended by the police, and that right is at least as great as the protections afforded to convicted prisoners under the Eighth Amendment). The Fourth Amendment requires law enforcement officers to provide objectively reasonable post-arrest care to an apprehended individual. *Tatum*, 441 F.3d at 1099. Although the Ninth Circuit has not prescribed the precise contours of what constitutes objectively reasonable post-arrest care, it has made clear that "a police officer who promptly summons ... necessary medical assistance has acted reasonably for purposes of the Fourth Amendment[.]" *Id. See Revere*, 463 U.S. at 245 ("Whatever the standard may be, [the defendant] fulfilled its constitutional obligation by seeing that [the apprehended individual] was taken promptly to the hospital that provided the treatment necessary for his injury.").

Defendants allege and Srabian does not contest that Harper requested emergency medical

17

1   services shortly after he shot Srabian, that Defendants did not delay or prevent Srabian from receiving

2   emergency medical services, and that Srabian did in fact receive emergency medical services.

3   Therefore, Defendants fulfilled their constitutional obligation in this regard.  To the extent Srabian

4   argues that Defendants' conduct in handcuffing and dragging him caused him to sustain physical

5   injuries or pain, those arguments are properly made as part of his claims for excessive force and

6   battery.  Defendants' motion for summary judgment as to Srabian's claim for deliberate indifference to

7   medical needs is GRANTED.

8                    iii.        **Conspiracy**

9         Srabian also alleges that Defendants engaged in a conspiracy under § 1983.  To show a

10   conspiracy between the defendants under § 1983, plaintiffs must allege "an agreement or 'meeting of

11   the minds' to violate constitutional rights."  *United Steelworkers of America v. Phelps Dodge Corp*.,

12   865 F.2d 1539, 1540–41 (9th Cir.1989) (en banc).   Thus, a cause of action under § 1983 for

13   conspiracy, plaintiff must show: "(1) the existence of an express or implied agreement among the

14   defendant officers to deprive him of his constitutional rights, and (2) an actual deprivation of those

15   rights resulting from that agreement."  *Ting v. United States*, 927 F.2d 1504, 1512 (9th Cir.1991)).

16         Srabian provides no evidence to show the existence of an agreement between Harper and

17   Carey to deprive him of his constitutional rights.  He essentially alleges that someone moved the gun

18   after he dropped it and concludes that Harper and Carey must have come to an agreement to move it to

19   protect Harper from liability for shooting Srabian and to expose Srabian to felony charges.  Harper and

20   Carey deny forming an agreement to move the gun or to deprive Srabian of his constitutional rights.

21   Even if there is evidence to support the allegation that the gun was moved, there is no evidence that

22   Harper or Carey moved it or that Harper and Carey formed an agreement to move it or to subject

23   Srabian to false charges.  Therefore, Srabian's allegations are insufficient to create a genuine issue of

24   material fact and Defendants' motion for summary judgment as to this claim is GRANTED.

25             2.        **Third Cause of Action – Battery**

26         Srabian alleges that Harper committed battery against him when Harper shot him.  In the

27   context of a peace officer's use of force, "[a] state law battery claim is [the] counterpart to a federal

28   claim of excessive use of force[,]" and similar standards apply.  *Brown v. Ransweiler*, 171 Cal.App.4th

516, 527 & n. 11, 89 Cal.Rptr.3d 801 (2009).  *See also Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1274, 74 Cal.Rptr.2d 614 (1998) (applying the standards for a federal excessive force claim under § 1983 to a state law battery claim).  Accordingly, Srabian's state law battery claim against Harper survives for the same reason his Fourth Amendment excessive force claims survive: there is a genuine issue of material fact as to whether Harper used excessive deadly force against Srabian when Harper shot Srabian.  Harper again attempts to invoke *Heck* to bar Srabian's claim.  However, as with Srabian's excessive force claims, a jury finding that Harper committed battery when he shot Srabian does not invalidate Srabian's conviction for exhibiting or brandishing a firearm.  As such, Defendants' motion for summary judgment on Srabian's battery claim is DENIED.

### 3.     Fourth Cause of Action – Negligent Infliction of Emotional Distress

Srabian's fourth cause of action alleges negligent infliction of emotional distress against Defendants Carey and Harper.  Defendants argue that Srabian provides no facts to support a negligent infliction of emotional distress claim.  Srabian does not contest this in his Opposition.  Defendants' motion for summary judgment as to this cause of action is GRANTED.

### 4.     Fifth Cause of Action – Intentional Infliction of Emotional Distress

Srabian's fifth cause of action alleges intentional infliction of emotional distress against Defendants Harper and Carey.  Under California law, "A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."  *Hughes v. Pair*, 46 Cal.4th 1035, 1050, 95 Cal.Rptr.3d 636, 209 P.3d 963 (2009)  (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 1001, 25 Cal.Rptr.2d 550, 863 P.2d 795 (1993)).  *See also Christensen v. Superior Court*, 54 Cal.3d 868, 903, 2 Cal.Rptr.2d 79, 820 P.2d 181 (1991) (listing the same elements).

Defendants Harper and Carey argue that where law enforcement officers' use of force is reasonable, such cannot constitute "outrageous conduct."  As a general proposition, this is true.  *See Graham*, 490 U.S. at 396 ("[T]he right to make an arrest ... necessarily carries with it the right to use some degree of [reasonable] physical coercion ... to effect it.").  "A defendant's conduct is 'outrageous'

[only] when it is so 'extreme as to exceed all bound of that [which is] usually tolerated in a civilized community.'" *Hughes*, 46 Cal.4th at 1050–51, 95 Cal.Rptr.3d 636, 209 P.3d 963 (quoting *Potter*, 6 Cal.4th at 1001, 25 Cal.Rptr.2d 550, 863 P.2d 795). Here, however, there is a genuine dispute as to whether Defendants' use of both deadly and non-deadly force was reasonable under the circumstances. Accordingly, Defendants are not entitled to summary judgment on this ground. *See Blankenhorn*, 485 F.3d 463 n. 17 (excessive force may constitute outrageous conduct and give rise to a claim for intentional infliction of emotional distress); *Burns v. City of Redwood City*, 737 F.Supp.2d 1047, 1067 (N.D.Cal.2010) (denying summary judgment on intentional infliction of emotional distress claim where there was a genuine dispute as to whether the officers' use of force was objectively reasonable).

Defendants also argue that Srabian fails to meet the "high bar" set by the California Supreme Court with respect to the requirement that the plaintiff show "severe emotional distress." *Hughes*, 46 Cal.4th at 1051. "Severe emotional distress means 'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.'" *Id.* (quoting *Potter*, 6 Cal.4th at 1004). Srabian's allegations in support of his claim are entirely based upon Defendants' conduct and Srabian's physical injuries. Srabian presents no arguments or evidence to show the severe or extreme emotion distress he claims to have suffered. Therefore, Defendants' motion for summary judgment as to this cause of action is GRANTED.

### 5.   Punitive Damages

Finally, Plaintiff Srabian seeks punitive damages from Defendants in this action. A jury may assess punitive damages under § 1983 when a defendant's conduct involves "reckless or callous indifference to the federally protected rights of others" without regard to actual intent or malice. *Larez v. City of Los Angeles*, 946 F.2d 630, 639 (9th Cir. 1991).

Viewing the facts in the light most favorable to Srabian, Harper shot Srabian on the walkway of his own front lawn when Harper was inside of his patrol car and Srabian was blinded by Harper's spotlight and did not assume a shooting stance or aim his firearm at Harper. Harper and Carey used combined force to handcuff Srabian after Harper shot Srabian and when Srabian was not resisting, unarmed, injured, and lying on the grass. Harper and Quintanilla then drag Srabian, who had been shot and handcuffed, for a distance of no greater than fifty feet such that Srabian's head hit the ground and

Srabian sustained abrasions to his face and head.  These facts raise a genuine issue as to whether Srabian can demonstrate that Defendants acted with reckless or callous indifference to Srabian's constitutional rights.  Defendants' motion for summary judgment on the issue of punitive damages is DENIED.

### CONCLUSION AND ORDER

For the reasons discussed above, the Court

1. GRANTS Defendants Harper and Carey's motion for summary judgment as to Plaintiff Donnie Srabian's claims for deliberate indifference to medical needs and conspiracy in his first cause of action, Plaintiff Srabian's fourth cause of action for negligent infliction of emotional distress, and Plaintiff Srabian's fifth cause of action for intentional infliction of emotional distress; and

2. DENIES Defendants Harper and Carey's motion for summary judgment as to Plaintiff Donnie Srabian's claims for excessive deadly force and excessive non-deadly force in his first cause of action, Srabian's third cause of action for battery, and punitive damages.

IT IS SO ORDERED.

Dated:   __November 27, 2012__          ____/s/ Lawrence J. O'Neill__
                                        UNITED STATES DISTRICT JUDGE