**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Estate of MARTIN SRABIAN, by its executor, DONNIE SRABIAN,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF FRESNO; FRESNO COUNTY SHERIFF MARGARET MIMS; COUNTY SHERIFF'S DEPUTIES FRANK HARPER and ROBERT CAREY; and DOES 1 through 50,<br><br>Defendants. | 1:08-CV-00336-LJO-SMS<br><br>**ORDER ON MOTION FOR RECONSIDERATION** (Doc. 100) |

**INTRODUCTION**

Before the Court is a motion by Defendants Frank Harper and Robert Carey (collectively "Defendants") for reconsideration of this Court's order on Defendants' motion for summary adjudication of the operative claims in Plaintiff Donnie Srabian's complaint. Specifically, the motion challenges the order's findings on Srabian's claim for excessive non-deadly force in violation of 42 U.S.C. § 1983 relating to Defendants' handcuffing of Srabian. For the reasons discussed below, this Court GRANTS Defendants' motion for reconsideration.

**BACKGROUND**

**A. Relevant Facts**

On Friday, February 16, 2007, Harper was dispatched to respond to a "911 hang-up call" at an address close to the residence of Donnie Srabian, his brother Martin Srabian, and his sister Beverly Srabian. When Harper pulled up outside of the Srabian residence, Donnie Srabian and Martin Srabian

were in the kitchen of their house, and they exited the house to investigate after hearing a noise outside. Donnie Srabian, who was holding a gun when he came outside, exited the house before Martin Srabian, and was shot by Harper.

After Harper fired, Donnie Srabian fell onto the grass and generally assumed a fetal position. Srabian's gun, ski mask and a knit beanie style cap were recovered on the grass.

After he shot Donnie Srabian, Harper put out a "shots fired" broadcast on his patrol car radio and requested that emergency medical services be dispatched to address Srabian's medical needs. Martin Srabian exited the house after Donnie Srabian. After Harper shot Donnie Srabian, Martin Srabian informed Harper that Donnie Srabian was his brother. Harper reported on his radio that that a subject had pointed a gun at him and that there was another subject who was being uncooperative.

Around this time or shortly afterward, Defendant Carey arrived on the scene to assist. When Carey arrived, Donnie Srabian was lying on the ground. Harper still had his gun drawn.

Harper and Carey together handcuffed Donnie Srabian, who was still lying on the ground. After being turned over to emergency medical personnel, Srabian was transported to University Medical Center by ambulance and was hospitalized from February 16 to February 21, 2007.

**B. Relevant Procedural History**

This action was filed on March 10, 2008. In a related criminal case, Donnie Srabian was convicted of the misdemeanor of brandishing or exhibiting a firearm in violation of Penal Code § 417(a)(2). *The People of the State of California vs. Donnie Charles Srabian*, Fresno County Superior Court Case No. F0790158. (Doc. 53). Harper and Carey filed a motion for summary judgment on the operative claims on October 19, 2012. (Doc. 82). On November 27, 2012 this Court granted in part and denied in part Defendants' motion for summary judgment. (Doc. 97). Defendants filed the instant motion for reconsideration on November 30, 2012, and Srabian filed an opposition on December 13, 2012. (Docs. 100, 111). Srabian then filed a supplement to the opposition on December 14, 2012. (Doc. 116).

**DISCUSSION**

**Motion for Reconsideration**

**A.    Legal Standard**

2

Defendants seek reconsideration of whether the evidence is such that a jury could reasonably conclude that the Defendants' conduct in handcuffing Srabian constituted an unreasonable use of force. Defendants move for reconsideration under Federal Rule of Civil Procedure 59(e) and the Court's inherent power to reconsider and modify its interlocutory orders. The Court clarifies as a preliminary matter that Rule 59(e) relates to the amendment of a final judgment or an appealable interlocutory order. *See* Fed.R.Civ.P. 60(b)(6); *Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461, 466 (9th Cir.1989). An order denying in part summary judgment, which is what Defendants seek reconsideration of here, does not fall into any of those categories; such an order is neither final nor immediately appealable. *See Senza–Gel Corp. v. Seiffhart*, 803 F.2d 661, 669 (Fed.Cir. 1986) ("A denial of summary judgment is not only not a 'final judgment', and not appealable, it is not a judgment at all. It is quite simply and solely a determination that one or more issues require a trial.") (citation omitted). Therefore, to the extent that Defendants seek reconsideration of the Court's November 27, 2012 order, their motion must rest on the Court's inherent power to reconsider, rescind, or modify its interlocutory orders. *See* Fed.R.Civ.P. 54(b); *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir.2001); *Andrews Farms v. Calcot, Ltd.*, 693 F.Supp.2d 1154, 1165 (E.D.Cal.2010) ("The denial of a summary judgment motion ... is an interlocutory, unappealable order that can be reviewed by the district court at any time before final judgment is entered.").

A district court may reconsider and reverse a previous interlocutory decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of controlling law. *Abada v. Charles Schwab & Co., Inc.*, 127 F.Supp.2d 1101, 1102 (S.D.Cal. 2000). Nevertheless, a court should generally leave a previous decision undisturbed absent a showing of clear error or manifest injustice. *Id.* at 1102. Reconsideration is not a mechanism for parties to make new arguments that could reasonably have been raised in their original briefs. *See Kona Enters. v. Estate of Bishop*, 229 F.3d 887, 890 (9th Cir. 2000). Nor is it a mechanism for the parties "to ask the court to rethink what the court has already thought through—rightly or wrongly." *United States v. Rezzonico*, 32 F.Supp.2d 1112, 1116 (D.Ariz. 1998). "To succeed, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *United States v. Westlands Water Dist.*, 134 F.Supp.2d 1111, 1131 (E.D.Cal. 2001).

With this standard in mind, the Court turns to Defendants' arguments.

**B.     Excessive Non-Deadly Force**

Defendants move for reconsideration of the Court's order denying them summary judgment on Plaintiff's claim for excessive non-deadly force in violation of 42 U.S.C. § 1983 with respect to Defendants' handcuffing of Plaintiff Srabian. To prevail on an excessive force claim under 42 U.S.C. § 1983, a plaintiff must establish that the use of force at issue was objectively unreasonable under the Fourth Amendment as determined by "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks omitted). The nature and quality of the alleged intrusion are weighed against the governmental interests at issue using the *Graham* factors of (1) how severe the crime at issue is, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396–397, *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir.2011) (en banc). In denying summary judgment, the Court concluded that, viewing the facts in the light most favorable to Srabian and drawing all reasonable inferences in his favor, a jury could reasonably find that Defendants' use of force in handcuffing Srabian was unreasonable and therefore excessive. The Court considered Srabian's state at the time he was handcuffed – he had been shot in the torso and was on the ground, bleeding, in a fetal position. The Court also noted that Srabian was no longer armed, that Martin Srabian had identified Donnie Srabian as his brother, dispelling any reasonable belief by the deputies that a home invasion was taking place, that Srabian did not attempt to flee and was not resisting at the time the handcuffs were applied, and that Harper and Carey used their combined physical force to maneuver Srabian into a handcuffed position.

In moving for reconsideration, Defendants argue that summary judgment on an excessive force claim relating to handcuffing is proper where a plaintiff fails to allege or prove that he suffered an injury as a result of the handcuffing. Defendants further argue that this standard of proof applies regardless of whether the plaintiff had been shot prior to being handcuffed.

Courts, including the Ninth Circuit, generally require evidence of non-*de minimis* injury suffered as a result of handcuffing to overcome a summary judgment motion in an action for excessive

force. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir.2001) (affirming summary judgment in favor of defendants in excessive-force claim because plaintiff did not submit medical records or other evidence showing she had suffered an actual injury as a result of being handcuffed). However, courts of appeal also have recognized that an arrestee's pre-existing injuries, if known or objectively observable to the arresting officer, impacts the excessive force analysis. For example, the Second Circuit recently observed that "there is a general consensus among courts to have addressed the issue that otherwise reasonable force used in handcuffing a suspect may be unreasonable when used against a suspect whom the officer knows to be injured[.]" *Beckles v. City of New York*, 2012 WL 3553388, *2 (2d Cir. Aug. 20, 2012).

The Tenth Circuit, in addressing this issue in a case with somewhat comparable material facts, also noted that, "[i]t is long established law of this and other circuits that a triable claim of excessive force exists where a jury could reasonably conclude that the officer handled a cooperating arrestee in a manner that the officer knew posed a serious risk of exacerbating the arrestee's injuries, which were themselves known to the officer." *Fisher v. City of Las Cruce*, 584 F.3d 888, 901 (10th Cir. 2009) (citations omitted). In *Fisher,* the arrestee suffered observable gunshot wounds to the bicep and stomach, and was lying bleeding on the ground. An officer then handcuffed him with his arms behind his back. *Id*. at 899-900. However, unlike the facts here, the officer placed a knee on Fisher's back to leverage his arms to handcuff him, Fisher pleaded with the officers to avoid exacerbating his injuries, and Fisher claimed that the officers' actions in forcing his arms behind his back caused him to endure "excruciating pain." *Id*. at 900. The Tenth Circuit reversed the district court's grant of summary judgment in favor of the defendants in part because, "a reasonable jury could conclude from the alleged objective facts that the extreme manner of handcuffing caused him a more than de minimis injury." *Id*.

The Sixth and Eighth Circuits also have spoken on this issue. In finding genuine issues of material facts concerning whether the officers used excessive force in handcuffing a plaintiff who informed the officers of a shoulder injury, the Sixth Circuit held that "[a]n excessive use of force claim could be premised on [the officer's] handcuffing [of the plaintiff here] if he knew that she had an injured arm and if he believed that she posed no threat to him." *Walton v. City of Southfield,* 995 F.2d

1331, 1333–34 (6th Cir. 1993), superseded by statute on other grounds as stated in *Livermore ex rel. Rohm v. Lubelan,* 476 F.3d 397, 407–08 (6th Cir. 2007).  Likewise, in *Guite v. Wright*, the Eighth Circuit affirmed the district court's denial of summary judgment where the plaintiff had a visible sling on his left arm, and the officers grabbed his wrist, pushed him backward, and held him up against a door.  147 F.3d 747, 750 (8th Cir. 1998).

The Ninth Circuit reversed a district court's grant of summary judgment in an excessive force claim where a plaintiff informed the defendant officers that he was a dialysis patient, repeatedly asked that his handcuffs be loosened, and still had a walnut-sized protrusion on his right hand nine months after he was handcuffed.  *Alexander v. County of Los Angeles*, 64 F.3d 1315, 1322-23 (9th Cir. 1995).  However, it remains unclear whether and how a pre-existing injury or condition alone would affect the Ninth Circuit's analysis and the non-*de minimis* injury requirement.  Moreover, although Srabian complained about pain in his back and neck while handcuffed, Srabian failed to provide evidence that he informed the arresting officers of any prior injuries that were exacerbated by the handcuffing.  There is also no evidence that Srabian complained to the arresting officers of any pain or injuries related to his gunshot wound that resulted from being handcuffed.

Defendants also argue that, in the reasonableness analysis, the factor of whether Srabian posed an immediate threat to the safety of the officers should have weighed in their favor.  In other words, Defendants argue that, although Srabian had been shot, he objectively could still be perceived as a threat to the safety of the officers.

After a review of the record, the Court must agree.  At the time of the oral argument on the motion, the Court gave the Plaintiff an additional opportunity to supplement the record.  Immediately prior to being shot, Srabian was exhibiting a weapon.  In fact, Srabian was later charged with and convicted of a firearm-related offense.  Moreover, Srabian failed to provide any evidence that he was immobilized at the time he was handcuffed such that he could not be a threat to the safety of the officers.  In fact, according to the deposition testimony, highlighted and submitted by Srabian, of a non-party officer on the scene, the handcuffing of Srabian "looked like a wrestling match on the ground." (Doc. 116, Attachment 5 pg. 3).  This indicates that Srabian still retained sufficient physical mobility to struggle with the officers, and, when combined with his proximity to a firearm, objectively

was perceived as a threat to the safety of the officers. Therefore, this "most important *Graham* factor" in the reasonableness of force analysis weighs in favor of Defendants' use of force in handcuffing Srabian. *Mattos*, 661 F.3d at 441 (internal quotation marks omitted). Further, deposition testimony submitted by Srabian illustrates that Srabian was not cooperative during his handcuffing and, at least temporarily, resisted being put into position to be handcuffed. (Doc. 116).

## CONCLUSION AND ORDER

For the reasons discussed above, the Court GRANTS Defendants' motion for reconsideration as to summary adjudication of Srabian's claim for excessive non-deadly force for Defendants' handcuffing of Srabian. As such, Srabian lacks an excessive force claim as to his handcuffing.

IT IS SO ORDERED.

Dated:   **December 20, 2012**                    **/s/ Lawrence J. O'Neill**
                                                                    UNITED STATES DISTRICT JUDGE